# Gang Land News
*Real Stuff about Organized Crime*

capeci@ganglandnews.com
Jerry Capeci

July 31, 2020

Honorable Jed S. Rakoff
Southern District of New York
500 Pearl Street
New York, NY 10007

### Re: US v. Fyfe, 16CR583 (JSR)

Dear Judge Rakoff:

I respectfully submit this letter in further support of my *pro se* letter motion to unseal all pleadings in the above referenced case, and to address several of the issues raised by the filings of the government and the defendant (hereinafter, Fyfe) in connection with my application.

First, the government wrongly asserts that this Court does have any additional information that would alter the prior judge's determination to not unseal the cited documents. A non-exhaustive list of the additional records that this Court now has at its disposal that the prior judge did not includes the testimony of Fyfe in *U.S. v. Giovinco* (in which this Court presided over), as well as all the related court filings, including exhibits and evidence introduced during the pre-trial, trial and sentencing proceeding in that case. In this regard, there is no basis to assume that the prior court reviewed any of such items in connection with the prior application to unseal, especially since its terse denial on June 23, 2020 does not imply that any such review was conducted.

Second, the government's position that no additional information exists to alter the prior ruling not to unseal is also legally misplaced. Indeed, not only have the circumstances of Fyfe's case changed to warrant unsealing (i.e., based on his public testimony and the evidence introduced in *Giovinco)*, but the passage of time alone justifies the need for unsealing now. In this regard, the government overlooks that the burden remains on the party seeking closure, and that party must justify that closure is still valid. Since the government states there are no compelling reasons to justify a continued sealing, the defendant bears the burden to justify a closure, and there is no need for the petitioner to produce additional evidence in support of his application. Indeed, as this Court has previously held in an unrelated matter, the fact that a sealing of judicial documents was once justified "is not sufficient in itself to rebut the presumption" of access later on. *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 387 (S.D.N.Y. 2019).

Notably, as the Court may recall, the government initially stated – in a sidebar colloquy on the day that Fyfe testified (November 25, 2019) – that it was ordered "not to reveal the fact of [Fyfe's] cooperation, including his guilty plea … until the public proceedings." Now it readily admits that it "does not object to the unsealing" on such grounds. Simply put, the petitioner bears

# **Gang Land News**
## *Real Stuff about Organized Crime*

capeci@ganglandnews.com
Jerry Capeci

no obligation to produce new evidence here, and the burden is on the party seeking closure to demonstrate a compelling need for such a drastic measure.

The moving party must also show that redactions would not satisfy such compelling reasons for closure. Since the government does not contend that sealing is required, it cannot justify closure on the grounds that the petitioner has not produced new evidence to undo the prior sealing order. And, since there is a "strong presumption in favor of public disclosure of judicial documents" (*In re Petrobras Sec. Litig.*, 393 F. Supp. at 387) such a non-compelling, collateral reason for a blanket closure cannot suffice under the circumstances.

Third, Fyfe also offers no compelling reasons why the filings in his criminal proceeding should remain sealed. Instead, he only offers a scattershot of vague assertions about his safety that fall flat when the government doesn't agree with his claims. In fact, Fyfe offers no rebuttal to the government assessment that a blanket sealing is no longer required. This alone defeats his claim that the circumstances are so compelling and grave to warrant closure.

Indeed, if that were true, the Government would have likely proffered some reasons for such a drastic measure, especially since it has a great interest in assuring the safety of Fyfe, and all its cooperators by undertaking sealing measures when necessary to protect them (and to motivate others to become cooperating witnesses.[1])

In this regard, Fyfe has also failed to overcome the fact that he has largely remained in public after he exposed his cooperation on the witness stand, and he has not identified anything in the sought-after pleadings that would put him in danger or, why redactions of the same would be insufficient – see *Petrobras Sec. Litig.*, 393 F. Supp. at 387, noting that reacting "snippets" of sensitive information (rather than a blanket sealing) is the proper course.

Thus, it remains unclear why Fyfe believes that his case is so "novel," especially when dozens of notorious cooperators (including Salvatore Gravano) have had the same type of pleadings unsealed, or why records concerning his own case and criminality would put him at such a risk to warrant continued sealing. Indeed, the government and a cooperating witness in another organized crime case in this district, one that likely has more deserving reasons for sealing, recently consented to the unsealing of the same documents – which, likely should not have been

---

[1] Upon information and belief, the government, as is customary in undercover operations like the one that Fyfe was part of, was the moving party in the initial sealing of the case. Its interests then were two-fold, to maintain the secrecy of its investigation and to protect its witness, who was a potential cooperating witness in an organized crime case. While secrecy about the investigation is no longer a concern, the government still has an obligation, as well as a vested interested in protecting their witness from harm, so it will be able to convince others they uncover committing crimes, as they did with Fyfe, to agree to become cooperating witnesses, who again like Fyfe, can help bring other criminals to the bar of justice.

# Gang Land News
**Real Stuff about Organized Crime**

capeci@ganglandnews.com
Jerry Capeci

sealed in the first place or until proper notice was afforded to the public (*see U.S. v. Evangelista*, 17-cr-191(RA).[2]

Puzzlingly, Fyfe asserts with no specificity that an unsealing would put him in the "crosshairs of dangerous people," ignoring that he has already been publicly exposed as a cooperating witness and testified against the same people whom he claims are a threat to him. Of course, Fyfe's claim that a serious threat exists by releasing his own court pleadings (regarding his own criminality) is absurd, since the government has already utilized Fyfe as a witness in open court, disclosed his recordings to various defendants, and both he and the government admit his cooperator status.

And since the government, which would seem to have even a greater vested interest than Fyfe in maintaining his safety, states that just like many other cooperating witness in organized crime cases, including the notorious Sammy Bull Gravano, Fyfe's case can be unsealed, the Court has an obligation to give weight to the government decision that closure is no longer necessary.

Fourth, Fyfe fails to appreciate that he has been charged and convicted of very serious offenses, and, therefore, his victims and the public have a right to monitor the outcome of his case. The fact that Fyfe has found a mechanism to potentially mitigate his punishment by cooperation doesn't create a special right for secrecy of his criminal case, nor does it provide him any further entitlements beyond what similarly situated defendants are afforded. In fact, the possibility that Fyfe may escape certain punishment, or be treated differently than those similarly situated, only compels a greater interest for his victims and the public to closely scrutinize his case. The public, which includes approximately 1600 members of Local 2D of the United Food and Commercial Workers Union, has a common law and First Amendment right of access now to all documents relating to the criminal charges against their former union President, not after he is sentenced.

In this regard, the public has every right to know why Fyfe may escape substantial punishment for the crimes he committed, and to ensure that its criminal justice system is functioning properly in prosecuting the admitted criminal. The public's interest in monitoring the cooperating witness program, including cases like Fyfe's, cannot be overstated, especially since (as of today) many cooperators have knowingly gamed the system to their advantage, and later capitalized on their crimes, and caused unquantifiable damage to others (i.e., as cooperator/informant testimony is believed to be one of the leading causes of wrongful convictions in America).

And, as this Court elegantly explained in another unrelated matter, the public's right to monitor

---

[2] This seemingly, growing number of knee-jerk decisions to seal documents in such cases is a frustrating aspect of covering the federal courts, and detrimental to the system's integrity. It not only defeats the public's right to access, and notice of closures. It also causes a delay – often a permanent one – in the public getting real-time information that it has a right to access, because news reporters, especially free-lance writers like the petitioner, and staff reporters for small news organizations, have neither the time nor the resources to find and contest all such closures.

# Gang Land News
**Real Stuff about Organized Crime**

capeci@ganglandnews.com
Jerry Capeci

the court system by access to judicial documents is of great importance and integral to the administration of justice:

> The public enjoys a common law presumptive right of access to judicial documents, a right that is potent and fundamental and that predates even the U.S. Constitution. This presumption of access recognizes that [a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny. Access to judicial documents is necessary for judges to have a measure of accountability and for the public to have confidence in the administration of justice. By ensuring such accountability and trust in the rule of law, the public's presumptive right to access court documents is integral to our system of government itself.

*Olson v. Major League Baseball*, No. 20-cv-632 (JSR), 2020 U.S. Dist. LEXIS 103208 (S.D.N.Y. June 12, 2020) (internal citations and quotations omitted).

Simply put, Fyfe has proffered no "exceptional circumstance" to obviate the "fundamental" and "potent" right that the public enjoys in scrutinizing his case, especially those documents upon which the Court will rely on to determine his case's resolution. *Id.* (noting that the strongest presumption of access applies to docuemnts that may impact the final disposition of a case).

Finally, this Court should make short work of Fyfe's other frivolous reasoning that an unsealing will allow the media to potentially "sensationalize" and put his case "out of context." Fyfe's concern about his public image should have been of major concern before he decided to commit a slew of crimes, and there are civil remedies available if he (or his attorney) truly has any legitimate gripes against the media's reporting.

In the same vein, if Fyfe believes that his sentencing judge would be prejudiced by continued media reports about him, he can try to figure out a way to change (by legislation and/or amendment to the constitution) the press and public's right to publish stories about criminals, and he may seek to recuse the sentencing judge if he believes there exists grounds to do so. Notably, if Fyfe ever engages in any of those (frivolous) pursuits, he should file motions on the public docket so that the public can scrutinize the developments in his case.

For all the above reasons, and for any other reason/legal doctrine this Court deems relevant and appropriate, the undersigned new reporter respectfully requests that all the judicial documents in *U.S. v Fyfe* be unsealed without further ado.

Sincerely,

Jerry Capeci
cc AUSAs Kimberly Ravener, Jason Richman, Justin Rodriguez, attorney Joseph Giaramita